# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
          **Plaintiff,**

    **v.**                            **Case No. 15-CR-136**

**TACOBY DAVIS**
          **Defendant.**

---

## <u>DECISION AND ORDER</u>

Defendant Tacoby Davis, serving a 114-month prison term for two pharmacy robberies, moves for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons that follow, I deny his motion.

## I. FACTS AND BACKGROUND

On May 5, 2015, Davis and his co-defendant Tajuan Green robbed a CVS Pharmacy location in Milwaukee. On entering the store, Green proceeded to the back pharmacy area, while Davis went directly to the front checkout area. Green brandished a black semi-automatic pistol, handed the pharmacy technician a black bag, and demanded narcotics. The pharmacy technician gave the bag to the pharmacist, who placed various drugs into the bag. Green took the bag and ran to the front of the store. Meanwhile, Davis brandished a black and silver pistol and pointed it at a store employee and customers. He entered the employee area behind the cash registers, ordered the employee to open the register, and removed cash. He then jumped over the counter and pointed the firearm at another customer and ordered her to the ground. The two men exited with approximately $312, various pill bottles containing Oxycontin and Oxycodone-Hydrochloride, and bottles of liquid Promethazine-Codeine. (PSR ¶ 13.)

Prior to the robbery, a third co-defendant, Markese Taylor, had entered the CVS for the purpose of determining whether the store had a security guard and where the pharmacy was located; Taylor did not re-enter the store during the actual robbery. (PSR ¶ 15.) After the robbery, Green drove the three men away, leading police on a high speed chase reaching speeds in excess of 90 mph. After a foot chase, officers arrested Green in the backyard of a residence. (PSR ¶ 17.) Shortly thereafter, they located Davis and Taylor at another residence. (PSR ¶ 19.) Inside the residence, within a heating vent in the living room, officers recovered a loaded 9mm semi-automatic pistol, consistent with the firearm Davis brandished during the robbery. (PSR ¶ 21.) Officers also searched the abandoned getaway vehicle, recovering a black semi-automatic .45 caliber pistol consistent with the firearm Green brandished during the CVS robbery. (PSR ¶ 23.) The car had been reported stolen on April 28, 2015. (PSR ¶ 24.)

At the time of his arrest, officers also searched Davis's bedroom, recovering an assault rifle, a Glock .40 caliber magazine, a clear plastic bag containing 0.47 grams of heroin, and a clear plastic bag containing 0.18 grams of cocaine. Defendant acknowledged there was a gun under his bed—an "AK" that he had for about one year. (PSR ¶ 65.)

Pursuant to a proffer agreement, Green made a statement admitting that he and Davis committed an armed robbery at a Walgreen's location in Milwaukee on April 13, 2015. Like the CVS robbery, they entered the store together, with Davis proceeding to the cash register area and Green the back pharmacy area. Green jumped over the counter, brandished a Glock pistol, and demanded Oxycodone and Promethazine with Codeine from the pharmacist. Green stole approximately 10 pill bottles, including bottles of morphine, and two or three bottles of Promethazine with Codeine. (PSR ¶ 30.) Davis approached the cash register area with his hand in his pocket, acting as if he had a gun, and threatened that if the victims did not get down

2

on the floor he would shoot them. (PSR ¶ 31.) On April 14, 2015, the day after the Walgreen's robbery, Davis sent a text message to a group of individuals stating "30s on deck," which law enforcement interpreted to mean Davis had 30 mg pills of Oxycodone available for sale, presumably from the robbery. (PSR ¶ 32.)

Davis pleaded guilty to two Hobbs Act robberies, 18 U.S.C. § 1951(a), and one count of brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c). Just 21 years old at the time of sentencing, Davis had no prior convictions (PSR ¶ 67), although the PSR reported several pending state cases, including one based on the contraband seized from his bedroom when he was arrested. (PSR ¶¶ 72-74.)

The sentencing guidelines recommended 51-63 months' imprisonment on the two robberies, and the statute required 84 months consecutive on the firearm count. (PSR ¶ 110.) Davis asked for the minimum (84 months and 1 day), while the government recommended a total sentence of 126 months (42 months on the robberies + 84 months on the gun count).

On July 21, 2016, I sentenced Davis to a total of 114 months (30+84). I found a substantial prison term necessary to reflect the seriousness of these offenses, which were no doubt terrifying to the victims, and to protect the public from further robberies. (R. 180 at 15:17-20.) Davis argued that he did not plan the robberies, but he was clearly an active participant and wasted no time in trying to sell the drugs he stole. (R. 180 at 15:21-24.) On the mitigating side, I took into account Davis's later attempt to cooperate with the government (although his information led to no new charges), the impact of his own drug use on his conduct, his very young age, and the absence of prior convictions. (R. 180 at 15-16.)

I found Davis's recommendation of 84 months and 1 day insufficient to satisfy the purposes of sentencing, finding that the robberies were "just too serious." (R. 180 at 17:7.) I

3

further noted that there appeared to be "some tension" between the defense recommendation and the Seventh Circuit's line of cases including United States v. Roberson, 474 F.3d 432 (7th Cir. 2007) and United States v. Ikegwuonu, 826 F.3d 408 (7th Cir. 2016).[1]  Davis also made a co-defendant disparity argument, noting that Taylor had received a sentence of just 15 months.  However, I noted that Taylor's case was much different; he participated in one robbery, not two, and his role was simply that of a scout/lookout.  I had not yet sentenced Green or reviewed his PSR, so I could not meaningfully compare his situation.[2]  (R. 180 at 16-17.)

Ultimately, I found a sentence closer to the government's recommendation appropriate.  Balancing the seriousness of the crimes against defendant's efforts to cooperate and the other mitigating circumstances, I found a sentence of 30 months on the robberies and 84 months consecutive on the § 924(c) count, for a total sentence of 114 months, sufficient but not greater than necessary to satisfy the purposes of sentencing.  (R. 180 at 17:19-25.)  Davis is currently serving his sentence at FCI Greenville, with a projected release date of July 23, 2023.[3]

On September 3, 2020, Davis filed a pro se motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A).  (R. 177.)  Davis indicated that in June 2020 he made a request for release with the warden, which was denied in July 2020.  (R. 177 at 1, 3.)  Having exhausted his administrative remedies, Davis argued for release because he "had asthma since birth,

---

[1]In these cases, the Seventh Circuit held that sentencing judges could not reduce a prison term for an underlying crime to offset the consecutive term mandated by 18 U.S.C. § 924(c)(1).  In  Dean v. United States, 137 S. Ct. 1170 (2017), the Supreme Court overruled these decisions.

[2]On February 16, 2018, I sentenced Green to a total of 54 months in prison on his guilty pleas to one count of Hobbs Act robbery and one count of brandishing a firearm during a crime of violence.  (R. 128.)

[3]https://www.bop.gov/inmateloc/ (last visited April 21, 2021).

4

under control by personal exercise program and diet." (R. 177 at 1; see also R. 177 at 4: "I have had asthma since birth and still have it 25 years later.".) He further stated that both of his children have asthma, and that their mothers needed his financial assistance and help with taking care of the children. (R. 177 at 1.) Finally, Davis argued that the amount of time he had served constituted a sufficient sentence, noting that he had completed programming in prison, avoided discipline, and had employment and a residence available on release. (R. 177 at 2, 4-13.)

I referred the matter to Federal Defender Services ("FDS"), pursuant to the court's standing order regarding First Step Act motions (R. 178), and on September 18, 2020, FDS indicated it would be filing a supplement to the pro se submission (R. 179). On September 21, 2020, counsel made another request for release to the warden, citing Davis's "myriad health problems, and the threat that COVID-19 presents to those in prison." (R. 181-5.) The warden denied that request on September 25, 2020. (R. 184-2.) On March 3, 2021, FDS filed a motion on Davis's behalf, arguing that his sentence should be reduced based on the change in the law brought about by the Dean decision, the disparity between his sentence and the term later imposed on Green, the risk posed by COVID-19 to him as a prisoner with asthma, and his post-sentencing rehabilitation. (R. 181.) The government responded in opposition on March 25, 2021 (R. 184), and the defense replied on April 2, 2021 (R. 187). The matter is ready for decision.

## II. DISCUSSION

### A.    Sentence Modification Standards

Section 3582(c)(1)(A) authorizes the district court to grant what is commonly known as

5

compassionate release, although, as Davis notes (R. 181 at 16-17), the term "compassionate release" is a misnomer, since the statute "in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).

The statute provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i). The statute contains three requirements: (1) the defendant must first make a request for release to the warden before applying to the court; (2) the defendant must then demonstrate to the court that "extraordinary and compelling reasons" warrant a reduction in his sentence; and (3) the court must determine whether, even if such reasons are shown, a reduction of the sentence would be inconsistent with the applicable 18 U.S.C. § 3553(a) factors. United States v. Cole, No. 08-CR-327, 2021 U.S. Dist. LEXIS 2404, at *5 (E.D. Wis. Jan. 7, 2021).

### 1. Exhaustion

Before 2018, compassionate release required a motion from the BOP. United States v.

6

Sanford, 986 F.3d 779, 781 (7th Cir. 2021).  However, the First Step Act of 2018 amended the compassionate release statute to permit the court to adjudicate a motion directly from the defendant—provided, however, that the defendant must first present his request for compassionate release to the warden and exhaust administrative appeals (if the request is denied) or wait 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.  Id. at 781-82.  The Seventh Circuit has held that, while this "exhaustion" requirement is not jurisdictional, it is a mandatory claim-processing rule which must be enforced if raised by the government.  Id. at 782.  The Seventh Circuit has also held that "an inmate is required to present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court."  United States v. Williams, 987 F3d 700, 703 (7th Cir. 2021).

### 2.    Extraordinary and Compelling Reasons

Aside from noting that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," Congress did not otherwise define the term.  28 U.S.C. § 994(t).  Rather, Congress instructed the Sentencing Commission, in promulgating general policy statements regarding the sentence modification provisions in § 3582(c)(1)(A), to describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.  Id.  The Commission's policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

7

(1)    (A) extraordinary and compelling reasons warrant the reduction . . .

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.  The commentary to the policy statement indicates that extraordinary and compelling reasons exist under these circumstances:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

8

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Commission has not updated the policy statement, which purports to require a motion from the director of the Bureau of Prisons, see U.S.S.G. § 1B1.13 cmt. n.4, since the passage of the First Step Act, which allowed defendants to bring their own motions. Accordingly, "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of §3582(c)(1)(A) does not curtail a district judge's discretion." United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020); see also Brooker, 976 F.3d at 237 ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

Giving the statutory terms their common meaning, a defendant seeking sentence reduction must demonstrate that his situation is extraordinary, i.e., beyond what is usual, customary, or regular, and his need for release compelling, i.e., irreparable harm or injustice will result if relief is not granted. United States v. Scott, 461 F. Supp. 3d 851, 862 (E.D. Wis. 2020). The Seventh Circuit has noted that the Commission's policy statement can guide the court's exercise of discretion without being conclusive. Gunn, 980 F.3d at 1180.

In the context of the COVID-19 pandemic, courts have found that sentence modification may be warranted if the prisoner demonstrates that he is particularly vulnerable to the virus based on his age, health status, or other specific circumstances; on the other hand, courts have

9

tended to deny compassionate release requests based on general concerns about possible exposure in prison. E.g., United States v. Dover, No. 14-CR-196, 2020 U.S. Dist. LEXIS 133340, at *16-17 (E.D. Wis. July 28, 2020). Courts have also concluded that a gross disparity between the sentence imposed and the term a defendant would receive today due to changes in the law can constitute an extraordinary and compelling reason for relief under § 3582(c)(1)(A). E.g., United States v. Brown, No. 06-CR-327, 2020 U.S. Dist. LEXIS 237263, at *10 (E.D. Wis. Dec. 17, 2020) (citing United States v. McCoy, 981 F.3d 271, 285 (4th Cir. 2020)). Finally, courts have held that "while rehabilitative efforts alone will not support compassionate release, the court may take such efforts into account as part of the analysis." United States v. Anderson, No. 14-CR-186, 2020 U.S. Dist. LEXIS 187983, at *13 (E.D. Wis. Oct. 8, 2020); see also United States v. Hudson, 967 F.3d 605, 613 (7th Cir. 2020) (noting that the court may in deciding a First Step Act motion consider the defendant's post-sentencing conduct as part of the § 3553(a) analysis).

### 3. Section 3553(a) Factors

If the court decides that extraordinary and compelling reasons have been shown, it must also consider the applicable § 3553(a) factors to determine whether the sentence should be modified. See United States v. Saunders, 986 F.3d 1076, 1078 (7th Cir. 2021) ("Because of the importance of the § 3553(a) factors, courts are not compelled to release every prisoner with extraordinary and compelling health concerns."). Those factors include: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed to provide just punishment, deterrence, protection of the public, and correctional treatment; (3) the kinds of sentences available; (4) the sentencing guideline range; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid

10

unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).  In some cases, a court may find that the relevant § 3553(a) factors outweigh the extraordinary and compelling reasons warranting compassionate release and/or that release would undermine the goals of the original sentence.  United States v. Bartlett, No. 06-CR-273, 2020 U.S. Dist. LEXIS 101393, at *13-14 (E.D. Wis. June 9, 2020).

**B.     Davis's Motions**

As indicated above, in the pro se motion Davis sought release based on his asthma and his children's health conditions/needs.  In the supplemental motion, he argues for sentence modification based on changes in the law, co-defendant sentence disparity, the impact of the COVID-19 pandemic, and his post-sentencing rehabilitation.  The supplemental motion does not mention Davis's children as an independent ground for relief. See Williams, 987 F.3d at 704 (holding that the district court "was entitled to limit its consideration to the arguments counsel presented").  In any event, Davis makes no claim that he is an essential care-giver or that the needs of his children are extraordinary as compared to other prisoners' children.  I need not further discuss this basis for relief.

**1.     Exhaustion**

Davis indicates that he submitted a request for release to the warden in June 2020, which the warden denied on July 5, 2020.  (R. 177 at 1, 3; R. 181 at 19.)  He made another request through counsel on September 21, 2020, which was denied on September 25, 2020, and more than 30 days have passed.  (R. 181 at 19; R. 181-5.)  He therefore contends that the exhaustion requirement is satisfied.  (R. 181 at 3 n.1, 19.)

The government disagrees.  In his pro se request to the warden, Davis sought release

11

"due to the covid-19 crisis," which "is killing people and getting deadlier by the day." (R. 184-1 at 2.) He indicated that he "should be released or put on home confinement because" he had only two years left to serve and had done well in prison. (R. 184-1 at 1.) In an attached letter, he indicated that he had a place to stay and a job at which to work. (R. 184-1 at 2.) In the September 2020 request from counsel, Davis referenced his "myriad health problems, and the threat that COVID-19 presents to those in prison." (R. 181-5.) Davis mentioned no specific medical conditions, including asthma, in either document. (R. 184 at 4.) While Davis cited his rehabilitative efforts in the June 2020 request, in neither submission did he mention changes in the law or co-defendant disparity as bases for release.

The government argues that Davis has not satisfied the exhaustion requirement with respect to his medical condition. (R. 184 at 5, 10.) As indicated, the Seventh Circuit requires a prisoner to "present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court." Williams, 987 F3d at 703. Since neither of Davis's administrative requests mentioned asthma, the government appears to be correct regarding this portion of his motion.

In reply, Davis states that "his health risks are not what drives this motion." (R. 187 at 5.) He contends that it was sufficient that he asked for release due to the risks to his health posed by the pandemic. (R. 187 at 5.) It is hard to see how a general request based on the various risks and hardships posed by the pandemic satisfies Williams. See also United States v. Link, No. 20-2103, 2021 U.S. App. LEXIS 8987, at *3-4 (7th Cir. Mar. 29, 2021) (finding that a prisoner did not adequately exhaust when his request to the warden cited the need to care for his children and the motion referenced termination of parental rights). Nevertheless, for the sake of completeness, and because the government does not raise exhaustion as a bar to

12

consideration of Davis's other arguments, I will address the motion on the merits.[4]

### 2.    Extraordinary and Compelling Reasons

I will address in turn each of the grounds for relief set forth in the supplemental motion: (a) the change in the law brought about by the Dean decision, (b) the disparity between Davis's sentence and the term later imposed on Green, (c) the risks/hardships posed by the COVID-19 pandemic, and (d) Davis's post-sentencing conduct.  Davis asks the court, not for immediate release, but rather a reduction of 18 months producing a total sentence of 96 months.

### a.    Dean

As indicated above, courts have granted compassionate release motions based on significant changes in the law.  For instance, in McCoy, the Fourth Circuit affirmed a sentence reduction based on the abolition of the "stacking" rule that had been applicable to multiple § 924(c) counts.[5]  981 F.3d at 285-88.  In United States v. Ikegwuonu, No. 15-cr-21-wmc-1, 2021 U.S. Dist. LEXIS 35423, at *6-7 (W.D. Wis. Feb. 24, 2021), the court granted relief based, at least in part, on Dean.[6]

Assuming, arguendo, that the change brought about by Dean could satisfy the

_____

[4]The government argues that Davis cannot use § 3582(c)(1)(A) to seek a sentence reduction based on Dean or co-defendant disparity.  (R. 184 at 5.)  As discussed below, I will assume that such arguments can be made under the compassionate release statute but find that Davis's contentions lack merit.

[5]Davis was convicted of just one § 924(c) count in this case, so he was not subjected to stacking.

[6]Judge Conley went on to explain "that change is not front of mind as the court considers his request.  Far from it.  Rather, the court is most persuaded by the fact that, while Ikegwuonu and his brother were serving their unquestionably lengthy sentences, already a body blow to their once close-knit family, they suffered a further unique set of tragedies. In particular, beyond even the loss of his father and sister, Ikegwuonu's mother is going through cancer treatments." Id. at *7.

13

extraordinary and compelling standard in an appropriate case, this is not such a case.[7] Davis contends that the court, citing then-standing precedent, indicated that it could not impose the sentence the defense requested. (R. 181 at 1; see also R. 181 at 5: "the Court also stated that such a sentence was not permitted under Seventh Circuit precedent".) That is not what happened. I noted that the "recommendation appears to be – you know, at least there's some tension between that" and the Seventh Circuit's Roberson line of cases. (R. 180 at 17:10-15.) I never said that I was forbidden to impose the sentence Davis wanted; nor did I make any comments suggesting that I would have imposed a lower sentence had that been permitted (unlike the court in Ikegwuonu).[8] To the contrary, I stated that "the robberies are just too serious, and so I don't think that a sentence of that sort would really satisfy the purposes of sentencing." (R. 180 at 17:7-9.) Davis accordingly fails to demonstrate that Dean provides a basis for sentence modification in his case. See United States v. Cook, No. 14-CR-226-JPS, 2020 U.S. Dist. LEXIS 240192, at *12 (E.D. Wis. Dec. 22, 2020) ("This case is not like Dean in which the sentencing court expressed reservation and concern in imposing a harsh sentence[.]").

---

[7]The government notes that Dean is not retroactive in the habeas context, Worman v. Entzel, 953 F.3d 1004, 1010 (7th Cir. 2020), and argues the same principle should apply in the compassionate release context. (R. 184 at 8.) There is a difference between making a change in the law categorically retroactive and permitting a court to consider such a change in its individualized review of a compassionate release motion. McCoy, 981 F.3d at 286; see also United States v. McGee, No. 20-5047, 2021 U.S. App. LEXIS 9074, at *27-28 (10th Cir. Mar. 29, 2021).

[8]In that case, Judge Conley "commented 'that I would have given a substantially lower sentence but for the mandatory nature of Section 924 of Title 18[.]'" 2021 U.S. Dist. LEXIS 35423, at *3.

14

### b.    Disparity

I will also assume, <u>arguendo</u>, that co-defendant disparity could in an appropriate case constitute an extraordinary and compelling reason for sentence modification. <u>See United States v. McDonald</u>, No. 94-cr-20256-1, 2020 U.S. Dist. LEXIS 106051, at *19 (W.D. Tenn. June 8, 2020) ("A court assessing a compassionate release motion may consider sentencing disparities among co-defendants when assessing whether there are extraordinary and compelling reasons to support release.").[9]  Again, however, this is not such a case.

As discussed above, I rejected Davis's disparity argument regarding co-defendant Taylor's sentence, as Taylor participated in just one robbery and occupied a lesser role in that crime than Davis (and Green).  Davis does not renew that argument now.  Rather, he focuses on the 54-month sentence I later imposed on Green.

As Davis candidly admits, "much of the disparity between his sentence and Green's is the product of Green's substantial assistance.  Despite the fact that both provided information, Green's information came first, and was therefore more useful to the government.  That's the way cooperating works in this district.  So some of the disparity is warranted."  (R. 181 at 8.)  However, he goes on to argue that the difference between his 114-month sentence and Green's 54-month term is too great, noting that they committed the same crimes, had similar criminal histories, and both pled guilty and debriefed.  Davis also surmises that the court considered <u>Dean</u> in later sentencing Green.  (R. 181 at 8.)

A difference in sentences justified by a co-defendant's cooperation is not "unwarranted."

---

[9]Some courts disagree.  <u>See, e.g.</u>, <u>United States v. Mitchell</u>, No. 03-40021, 2021 U.S. Dist. LEXIS 24584, at *13-14 (C.D. Ill. Feb. 9, 2021) (citing <u>United States v. Arojojoye</u>, 806 Fed. Appx. 475, 477 (7th Cir. 2020)).

15

United States v. Bartlett, 567 F.3d 901, 909 (7th Cir. 2009). Without getting into specifics, Green cooperated extensively, promptly debriefing in this case and disclosing his and Davis's commission of the Walgreen's robbery; he provided information about several others involved in criminal activity and testified in open court at the trial in one of those cases. (R. 184 at 9.) In exchange, the government made a motion under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. Green's lower sentence was the product of his extensive cooperation.[10] While Davis debriefed, his information was not useful to the government. Given this significant difference in their situations, there is nothing unwarranted about the disparity between their sentences.

### c. COVID-19 Pandemic

Courts have granted compassionate release to prisoners at high risk from COVID-19 due to their medical conditions. See Dover, 2020 U.S. Dist. LEXIS 133340, at *16-17. The CDC has indicated that asthma, if moderate to severe, can make a person more likely to get severely ill from COVID-19.[11] Davis asserts that he has asthma (R. 181 at 9; R. 177 at 1), but he presents no medical evidence documenting the diagnosis, much less confirming its severity. See id. at *17 ("While defendant suffers from asthma, she presents no medical evidence showing that her condition falls in the moderate to severe category referenced by the CDC."). Davis told the PSR writer that "he is in good physical health and does not suffer from any chronic medical conditions or take any prescribed medications." (PSR ¶ 92.) His prison

---

[10]In reply, Davis attempts to denigrate Green's cooperation, but his argument is unpersuasive. (R. 187 at 4-5.)

[11]https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited April 20, 2021).

16

medical records, provided by the government, make no mention of asthma or history of asthma. (R. 184-3.) Even if his own pro se motion, Davis concedes that his asthma is "under control." (R. 177 at 1.) Courts have denied compassionate release motions based on asthma where the prisoner failed to demonstrate severity and/or the condition appeared to be well-controlled. United States v. King, No. 18-20416, 2021 U.S. Dist. LEXIS 63402, at *5-6 (E.D. Mich. Apr. 1, 2021) (collecting cases).

Davis notes that more than 700 inmates at FCI Greenville have tested positive, including him, making it one of the hardest hit prisons. (R. 181 at 9.) According to the most recent figures posted by the BOP, no inmates are currently positive, 14 staff members are positive, no inmates or staff members have died, 706 inmates have recovered, and 64 staff members have recovered.[12] The BOP further indicates that 149 staff members and 434 inmates have been fully inoculated.[13] The situation at FCI Greenville thus appears to be far different at this point. Moreover, the medical records presented by the government show that Davis's COVID case was asymptomatic and that he made a full recovery. (R. 184-3 at 2-4.) Davis does not claim to have received inadequate care after he tested positive or that he experiences any lingering effects.

While it is possible Davis could become reinfected (and his second bout with the virus could be worse than the first, see R. 181 at 10-11), the record shows that he is a young man, just 25 years old, in good health. As indicated, he reported no health problems to the PSR writer (PSR ¶ 92), and the prison medical records provided by the government document no

---

[12]https://www.bop.gov/coronavirus/ (last visited April 20, 2021).

[13]https://www.bop.gov/coronavirus/ (last visited April 20, 2021).

chronic medical conditions. Given these facts, Davis's speculation about reinfection cannot satisfy the extraordinary and compelling reasons standard.

Davis attaches to his motion a declaration from Dr. Tara Vijayan discussing immunity, reinfection risks in prisons, and recovery complications. (R. 181-1.) I accept that persons who have recovered remain at risk of reinfection, particularly in the prison context, and that symptoms may linger. I have also held that inmates who contracted the virus and recovered may be able to demonstrate extraordinary and compelling reasons for release due to the pandemic. See United States v. Hicks, No. 18-CR-227, 2020 U.S. Dist. LEXIS 213100, at *17 (E.D. Wis. Oct. 7, 2020). But none of this helps Davis. Dr. Vijayan's declaration, prepared for a different case, provides no information specific to this matter. As discussed above, Davis is a healthy young man, who does not fall in the "critical sub-populations" Dr. Vijayan mentions: older individuals, those with lowered immune systems, and those with obesity. (See R. 181-1 at 10 ¶ 31.)

Davis also notes that prison life has been harder, more punitive, during the pandemic. (R. 181 at 12.) I agree that this is a factor courts may consider in deciding a compassionate release motion. However, Davis develops no argument regarding the impact of the pandemic on his situation, instead relying on other cases and generalities about prison life. (R. 181 at 12-14.) "In the context of the COVID-19 pandemic, § 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the . . . particular circumstances of where he is housed and his personal health conditions." United States v. Thomas, No. 1:11-CR-22, 2020 U.S. Dist. LEXIS 172963, at *7 (N.D. Ind. Sept. 22, 2020) (internal quote marks omitted).

### d. Rehabilitation

Finally, courts have concluded that it is appropriate to consider a prisoner's post-

18

sentencing behavior in deciding a compassionate release motion. Davis contends that he has done quite well, maturing, taking advantage of programming, avoiding discipline, and preparing for the future. (R. 181 at 14; see R. 181-2, programming certificates; R. 181-3, disciplinary data.) Letters from his family indicate that he has grown up and is focused on the future. (R. 181 at 15; see R. 181-4, letters.) While Davis is to be commended for his conduct, he does not present evidence of extraordinary efforts. Cf. Anderson, 2020 U.S. Dist. LEXIS 187983, at *13-18 (discussing the prisoner's remarkable efforts, supported by letters from BOP personnel). Accordingly, he does not establish a basis for sentence reduction on this ground.[14]

### 3. Sentence Reduction/§ 3553(a) Factors

As Davis notes, § 3582(c)(1)(A) permits a court to reduce a prisoner's sentence without granting immediate release. (R. 181 at 17.) He contends that the combination of developments since his sentencing—the change prompted by Dean, the disparity produced by Green's sentence, and the COVID-19 pandemic—justify a modest change in his sentence. (R. 181 at 17.) He asks for a reduction of 18 months, producing a total sentence of 96 months. He contends that this term is still nearly twice as long as Green's and is compatible with the remaining § 3553(a) factors. (R. 181 at 18.) He concludes that reducing his sentence will not endanger the public, as he is not the same impulsive, drug abusing teenager he was when he committed these crimes. (R. 181 at 18-19.)

As with Davis's previous arguments, I agree that the First Step Act may in an appropriate

_____

[14]According to the prison records provided by the government , Davis initially requested participation in the RDAP but on being told he would not receive the early release incentive he declined participation. (R. 184-3 at 38.) In reply, Davis explains that he declined the program because it meant moving to a different prison, father away from his family. (R. 187 at 7.) I do not hold Davis's declination of this program against him in deciding the motion.

19

case permit the court to reduce, but not eliminate, the balance of the original sentence based on subsequent legal and/or factual developments.  (See R. 181 at 19-20; R. 187 at 7.)  I also agree that the court should consider the combination of factors a prisoner presents, as Davis argues in reply.  (R. 187 at 1-2.)[15]

However, this is not an appropriate case for modification.  I continue to believe that the 114-month sentence imposed properly balances the seriousness of the offense and the need to protect the public and deter others against the mitigating factors including Davis's youth, drug problem, and attempted cooperation.  I would not have imposed a different sentence in light of Dean, and none of the other developments Davis cites convince me that the sentence should be modified.

While I applaud Davis's maturation and plans for the future, the sentence imposed is necessary to satisfy the purposes of sentencing.  These were serious crimes, traumatic to the victims, one of whom decided to leave the area in order to feel safer.  (PSR ¶ 35.)  Further, as the government notes, while Davis had no other convictions at the time of sentencing, he had three pending felony cases and was subsequently convicted and sentenced to prison in two of them (with the charges in the third case dismissed and read in as part of plea negotiations).[16] (R. 184 at 16.)  The § 3553(a) factors weigh against the 18-month reduction Davis seeks.  See United States v. Bailey, No. 20-2666, 2021 U.S. App. LEXIS 11581, at *5 (7th Cir. Apr. 21, 2021) (holding that the district court acted within its discretion in concluding that the other § 3553(a)

---

[15]On the other hand, "the compassionate release statute does not give district courts free rein to reconsider lawfully imposed sentences." United States v. Bowie, No. 07-CR-123, 2020 U.S. Dist. LEXIS 240502, at *15-16 (E.D. Wis. Dec. 22, 2020).

[16]https://wcca.wicourts.gov/caseDetail.html?caseNo=2015CF002222&countyNo=40& mode=details (last visited April 21, 2021).

factors outweighed the prisoner's commendable post-conviction behavior); United States v. Jones, 838 Fed. Appx. 199, 200 (7th Cir. 2021) (holding that the district court reasonably determined that the § 3553(a) factors counseled against early release, and noting that weighing the prisoner's criminal past against his recent good conduct is an appropriate exercise of discretion).

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motions (R. 177, 181) are denied.

Dated at Milwaukee, Wisconsin, this 21st day of April, 2021.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge

21